I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY ~~PLF w/CV66 Forms~~
FIRST CLASS MAIL, POSTAGE PREPAID, TO ~~ALL COUNSEL~~
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: 10 - 14 - 11

DEPUTY CLERK



**FILED**

**OCT 1 4 2011**

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SHANNON RILEY, | Case No. CV 09-8850-JFW (MLG) |
| Plaintiff, | ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| A.W. DUNN, et al., | |
| Defendants. | |

## I.   Facts and Procedural History

On August 6, 2010, Plaintiff Shannon Riley filed this second amended pro se civil rights complaint pursuant to 42 U.S.C. § 1983. The defendants, A.W. Dunn, R. Furster and R. Poodry, are all correctional officers employed at the California Men's Colony ("CMC") in San Luis Obispo, California, where Plaintiff was incarcerated at the time of the events giving rise to the cause of action.

The facts alleged in the complaint are as follows:[1] Plaintiff claims that in April 2006, Defendant Poodry conducted several

---

[1]   The facts discussed in this section are taken from Plaintiff's second amended complaint.

harassing searches of Plaintiff and confiscated Plaintiff's cell keys. (Compl. ¶¶ 20-28.) On June 17, 2006, Plaintiff was involved in a fight with inmate Rasberry, as a result of which both inmates were placed in administrative segregation. When they were released, Rasberry informed Plaintiff that Poodry had tried to convince him to claim that Plaintiff assaulted him. (Compl. ¶¶ 28-29.)

On December 2, 2006, Plaintiff was assaulted by inmate Foletti, after which he and Foletti were escorted to the program office, where "it was determined" that Foletti assaulted Plaintiff. Defendant Poodry "made every effort" to have Plaintiff placed in administrative segregation but the unit sergeant did not do so. Plaintiff attempted several times to submit administrative grievances against Poodry but they were not processed by the prison appeals system. (Compl. ¶¶ 50-62.)

On December 14, 2006, prison staff received an anonymous report from another inmate, identifying Plaintiff as the individual who had assaulted Foletti with a blunt instrument. Plaintiff was placed in the segregated housing unit based upon this confidential report. On December 26, 2006, Plaintiff received a rules violation report, in which Poodry charged Plaintiff with the offense of "battery on an inmate with a weapon." On the same day, Plaintiff received notice that confidential information had been placed in his file. (Compl. ¶¶ 46-49.) Plaintiff claims he made multiple attempts to file an administrative grievance against Poodry for filing a false document and for soliciting false and unreliable confidential information, but his grievances were not processed. (Compl. ¶¶ 50-62.)

The disciplinary hearing on the charge of battery on an inmate with a weapon was held on February 11, 2007, before Defendant Dunn.

Dunn considered five confidential reports that had been submitted for review. Plaintiff argued that the confidential information was not reliable, that no other individuals had identified him as the assailant, and that he was physically unable, because of a medical condition, to strike Foletti with a blunt object. Dunn rejected Plaintiff's request to call certain unidentified witnesses. Following the hearing, Dunn determined that Plaintiff was guilty of assaulting Foletti with a weapon. Plaintiff was assessed a 360-day loss of credit, loss of other privileges, and confinement in the segregated housing unit ("SHU") for a term of fifteen months. (Compl. ¶¶ 63-76.)

Plaintiff appealed the finding and was re-interviewed by Defendant Furster as part of the initial appeal. Furster allegedly did not review any of the evidence that Plaintiff presented in his defense. Furster rejected Plaintiff's arguments, and the appeal was denied in full. A director's level appeal resulted in partial relief. Because the hearing had not been conducted timely, the credit loss sanction was vacated. (Compl. ¶¶ 78-88.)

Plaintiff contends that conditions in the SHU created an atypical and significant hardship upon him. He claims that while in the SHU, he began to have suicidal thoughts and required additional psychological treatment. He also contends that he had concerns for his safety because of the violent nature of some inmates. Plaintiff alleges that he was denied outdoor time and exercise for a period of three to four months and had difficulty obtaining proper medical care. He also claims that he had to sleep on the floor where he was exposed to rodents because he was unable to climb to his assigned top bunk, although he was eventually given a lower bunk. (Compl. ¶¶ 95-106.)

//

3

1    Plaintiff also alleges that, because he was placed in a higher
2  custody  facility,  his  movement  and  access  to  programs,  work
3  opportunities, and the law library was restricted. He also claims that
4  the higher level of custody and the inmate battery charge will
5  negatively affect his chance for parole in the future. (Compl. ¶¶ 109-
6  129.) Plaintiff seeks compensatory and punitive damages as well as
7  expungement of his prison record.

8    Plaintiff asserts the following claims for relief:

9  1.   Defendant Poodry violated Plaintiff's First Amendment rights by
10         retaliating against him for filing prison grievances.

11  2.   Defendant Dunn violated Plaintiff's Fourteenth Amendment due
12         process rights by denying Plaintiff the witnesses he requested
13         and by disregarding Plaintiff's challenge to the evidence at the
14         hearing on the rules violation.

15  3.   Defendant Furster violated Plaintiff's Fourteenth Amendment due
16         process rights by affirming the finding of misconduct.

17  4.   Plaintiff's Fourteenth Amendment due process rights were violated
18         because the prison appeals system failed to process his appeals
19         against Defendant Poodry.

20  5.   Plaintiff's Fourteenth Amendment due process rights were violated
21         because the conditions in the SHU created an atypical hardship in
22         relation to inmates in the general prison population.

23  6.   The conditions in the SHU violated Plaintiff's Eighth Amendment
24         rights.

25  7.   The  conditions  in  the  SHU  violated  Plaintiff's  Fourteenth
26         Amendment equal protection rights.

27    On June 24, 2011, Defendants filed a motion to dismiss the
28  complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On

4

1   July 25, 2011, Plaintiff filed an opposition to the motion to dismiss.
2   The matter is now ready for decision.

3

4   **II.   Standard of Review**

5       Federal Rule of Civil Procedure 12(b)(6) provides for dismissal
6   of a complaint for "failure to state a claim upon which relief may be
7   granted." To survive a motion to dismiss for failure to state a claim,
8   a plaintiff must allege "enough facts to state a claim to relief that
9   is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S.
10  544, 570 (2007). A claim has "facial plausibility when the plaintiff
11  pleads factual content that allows the court to draw the reasonable
12  inference that the defendant is liable for the misconduct alleged."
13  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550
14  U.S. at 556). The plausibility standard is not akin to a "probability
15  requirement," but it requires more than a sheer possibility that a
16  defendant has acted unlawfully. *Id.* Where a complaint pleads facts
17  that are "merely consistent with" a defendant's liability, it "stops
18  short of the line between possibility and plausibility of entitlement
19  to relief." *Twombly*, 550 U.S. at 557.

20      The Court in *Twombly* explained that a complaint is read in
21  conjunction with Federal Rule of Civil Procedure 8(a)(2) which
22  requires a "showing" that the plaintiff is entitled to relief, "rather
23  than a blanket assertion" of entitlement to relief. *Id.* at 556 n.3.
24  While Rule 8 does not require "detailed factual allegations," it
25  nevertheless    "demands    more    than    an    unadorned,    the
26  defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.
27  A pleading that offers "labels and conclusions" or "a formulaic
28  recitation of the elements of a cause of action will not do." *Twombly*,

1   550 U.S. at 555. Thus, "allegations in a complaint or counterclaim
2   must be sufficiently detailed to give fair notice to the opposing
3   party of the nature of the claim so that the party may effectively
4   defend against it. [Also], the allegations must be sufficiently
5   plausible that it is not unfair to require the opposing party to be
6   subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191,
7   1204 (9th Cir. 2011).

8       In considering Defendants' motion to dismiss, the Court must
9   accept all factual allegations of the complaint as true and construe
10  those facts, as well as the inferences from those facts, in the light
11  most favorable to Plaintiff. *See Knievel v. ESPN*, 393 F.3d 1068, 1072
12  (9th Cir. 2005). Pro se pleadings are held to a less stringent
13  standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S.
14  89, 93 (2007) (per curiam) (citations omitted). However, the liberal
15  construction doctrine "applies only to a plaintiff's factual
16  allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). The
17  Court need not accept as true unreasonable inferences or conclusory
18  legal allegations cast in the form of factual allegations. *See Ileto*
19  *v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western*
20  *Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

21

22  **III. Discussion**

23      Defendants raise various arguments in support of the motion to
24  dismiss, including: (1) Defendants are entitled to Eleventh Amendment
25  immunity to the extent Plaintiff seeks money damages against
26  Defendants in their official capacity; (2) Plaintiff failed to exhaust
27  his administrative remedies as to all but one of his claims before
28  filing suit; (3) Plaintiff fails to state a Fourteenth Amendment due

1  process claim against Defendants Dunn and Furster; (4) Plaintiff fails
2  to state a Fourteenth Amendment due process claim against any of the
3  Defendants based upon conditions in the SHU; (5) Plaintiff fails to
4  state a Fourteenth Amendment due process claim against any of the
5  Defendants based upon the failure to process his prison grievances;
6  (6) Plaintiff fails to state an Eighth Amendment claim against any of
7  the Defendants; (7) Plaintiff fails to state a Fourteenth Amendment
8  equal protection claim; and (8) Defendants are protected from
9  liability for monetary damages in their individual capacities by
10 qualified immunity. (Mot. to Dismiss at 4.) Because the complaint
11 fails to state a viable claim against any of these Defendants, the
12 complaint will be dismissed with leave to amend. *Lopez v. Smith*, 203
13 F.3d 1122 (9th Cir. 2000) (*pro se* litigant should be given an
14 opportunity to amend deficient pleadings unless it is clear that these
15 deficiencies cannot be overcome).

16     **A.     Eleventh Amendment Immunity**

17          Defendants contend that because Plaintiff seeks money damages for
18 Defendants' actions undertaken in their official capacities, the
19 Eleventh Amendment provides absolute immunity and bars recovery. (Mot.
20 to Dismiss at 4.) The Eleventh Amendment states:

21          The Judicial power of the United States shall not be
22          construed to extend to any suit in law or equity, commenced
23          or prosecuted against one of the United States by Citizens
24          of another State, or by Citizens or Subjects of any Foreign
25          State.

26 U.S. Const. amend. XI. Despite the absence of a textual reference to
27 suits by individuals against their own states in federal court, the
28 Supreme Court has long interpreted the Eleventh Amendment to bar such

1  actions. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Absent a waiver of
2  Eleventh Amendment immunity, a state may not be sued in federal court.
3  *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense*
4  *Bd.*, 527 U.S. 666, 670 (1999); *see also Quillin v. Oregon*, 127 F.3d
5  1135, 1138 (9th Cir. 1997)(per curiam). This immunity extends to suits
6  against state officers acting in their official capacities, because
7  such suits target not the official, but rather the official's office.
8  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see*
9  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).

10  There is no indication that California or its officers have
11  waived immunity, nor did Congress waive the state's immunity pursuant
12  to its remedial enforcement powers under the Fourteenth Amendment.
13  Accordingly, Defendants' motion to dismiss Plaintiff's claims for
14  money damages against all Defendants in their official capacities
15  should be granted.

16  **B.   Exhaustion**

17  Defendants argue that Plaintiff failed to exhaust his
18  administrative remedies before filing suit, except with respect to his
19  due process claim against Defendant Dunn, requiring dismissal of this
20  action under 42 U.S.C. § 1997e(a). (Mot. to Dismiss at 5.) That
21  statute states, in relevant part:

22      No action shall be brought with respect to prison conditions
23      under [42 U.S.C. § 1983], or any other Federal law, by a
24      prisoner confined in any jail, prison, or other correctional
25      facility until such administrative remedies as are available
26      are exhausted.

27  Under this provision, all state and federal prisoners are required to
28  exhaust available prison administrative remedies before seeking relief

in federal court. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001); *Marella v. Terhune*, 562 F.3d 983, 985 (9th Cir. 2009)(per curiam). The exhaustion requirement is mandatory, and may not be excused by a court in the interests of justice. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)(citations omitted); *Booth*, 532 U.S. at 740 n.5; *Bovarie v. Giurbino*, 421 F. Supp. 2d 1309, 1312 (S.D. Cal. 2006). It is the defendant's burden to plead and prove a plaintiff's failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003).

Plaintiff contends that he attempted numerous times to exhaust his administrative remedies but that these efforts were futile because various CMC employees removed his administrative complaints from the prison mail system and discarded them. (Pl.'s Opp. at 2-3.) Plaintiff attaches detailed notes he claims that he took to document the efforts he made to exhaust his administrative remedies. (Id. at 3-5.)

Because there is a factual dispute as to whether Plaintiff's attempts to exhaust his administrative remedies were thwarted by prison officials, the Court cannot grant Defendants' motion to dismiss the alleged unexhausted claims. Accordingly, Defendants' motion to dismiss Plaintiff's claims based upon failure to exhaust is denied without prejudice to refiling after further development of the record.

**C.   Fourteenth Amendment Claim Against Defendant Dunn**

Plaintiff alleges that Defendant Dunn, who conducted the hearing on Plaintiff's rules violation charge, violated his due process rights by failing to allow Plaintiff to call the witnesses he requested for the hearing. Defendants contend that Plaintiff's Fourteenth Amendment due process claims against Dunn should be dismissed because Plaintiff was only punished with administrative segregation and he has no

1  protected liberty interest in remaining in the general prison
2  population.

3      Under the Fourteenth Amendment's Due Process Clause, a prisoner
4  is entitled to certain due process protections when he is charged with
5  a disciplinary violation, including the rights to call witnesses, to
6  present documentary evidence and to have a written statement by the
7  fact-finder as to the evidence relied upon and the reasons for the
8  disciplinary action taken. *Wolff v. McDonnell*, 418 U.S. 539, 564-571,
9  (1974). These procedural protections, however, "adhere only when the
10 disciplinary action implicates a protected liberty interest in some
11 'unexpected matter' or imposes an 'atypical and significant hardship
12 on the inmate in relation to the ordinary incidents of prison life.'"
13 *Serrano*, 345 F.3d at 1078 (citing *Sandin v. Connor*, 515 U.S. 472, 484
14 (1995); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (2003) ("If the
15 hardship is sufficiently significant, then the court must determine
16 whether the procedures used to deprive that liberty satisfied Due
17 Process.") (citations omitted); *Serrano v. Francis*, 345 F.3d 1071,
18 1078 (9th Cir. 2003).

19     Because the loss of good time credits was vacated, there is no
20 liberty interest implicated in the punishment imposed for the
21 misconduct finding. However, Plaintiff claims that he has suffered an
22 atypical and significant hardship by his placement in two segregated
23 housing units. In determining whether a prison hardship is atypical
24 and significant, the Ninth Circuit looks at the following factors:
25 "(1) whether the challenged condition 'mirrored those conditions
26 imposed upon inmates in administrative segregation and protective
27 custody,' and thus comported with the prison's discretionary
28 authority; (2) the duration of the condition, and the degree of

1  restraint imposed; and (3) whether the state's action will invariably
2  affect the duration of the prisoner's sentence. *Serrano*, 345 F.3d at
3  1078 (citing *Sandin*, 515 U.S. at 486-487; *Keenan v. Hall*, 83 F.3d
4  1083, 1089 (9th Cir. 1996).

5       Typically, administrative segregation in and of itself does not
6  implicate a protected liberty interest. *See, e.g., Sandin*, 515 U.S. at
7  486 ("[D]isciplinary segregation, with insignificant exceptions,
8  mirror[s] those conditions imposed upon inmates in administrative
9  segregation and protective custody."); *Resnick v. Hayes*, 213 F.3d 443,
10 449 (9th Cir.2000) (holding that the pre-sentencing prisoner had no
11 liberty interest in being free from administrative segregation); *May*
12 *v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

13      Courts have found the existence of atypical and significant
14 hardships in a very limited scope of cases. *See, e.g., Wilkinson v.*
15 *Austin*, 545 U.S. 209, 221-24 (2005) (holding inmates' liberty
16 interests were implicated by their indefinite confinement in highly
17 restrictive "supermax" prison, where the inmates were deprived of
18 almost all human contact and were disqualified from parole
19 consideration); *Serrano*, 345 F.3d at 1078-79 (placing disabled inmate,
20 without his wheelchair, in segregation unit not equipped for disabled
21 persons gave rise to a liberty interest); *Ramirez*, 334 F.3d at 861
22 (directing district court to consider two-year duration of
23 administrative segregation in determining whether placement imposed
24 atypical and significant burden). "A liberty interest does not arise
25 even when administrative segregation imposes severe hardships, such as
26 denial of access to vocational, educational, recreational, and
27 rehabilitative programs, restrictions on exercise, and confinement to
28 a cell for lengthy periods of time." *Toussaint v. McCarthy*, 801 F.2d

1  1080, 1092 (9th Cir. 1986) (internal quotations omitted).

2  Here, Plaintiff has alleged that his confinement in
3  administrative segregation imposed a significant and atypical hardship
4  in that he was denied exercise for four months, and was forced to
5  sleep on the floor in segregated housing with rodents due to his
6  medical condition, which prevented him from accessing an upper bunk.
7  In the context of a motion to dismiss, it cannot be said that
8  Plaintiff has failed to allege that these deprivations imposed a
9  significant and atypical hardship in relation to the ordinary
10 incidents of prison life.[2] Because a question exists as to whether any
11 of these facts are true and further, whether they demonstrate
12 conditions so significant and atypical as to implicate the due process
13 clause, the motion to dismiss this claim is denied without prejudice.
14 *See Young v. Smalls*, 2010 WL 1526370 *2 (S.D. Cal. 2010)(for screening
15 purposes a prisoner demonstrated a cognizable liberty interest when he
16 alleged that he was denied outdoor exercise for nine month); *see also*
17 *Tatum v. Rosario*, 2005 WL 2114190 *4 (E.D. Cal. 2005)(total denial of
18 all visitors and suspension of outdoor exercise for two months
19 sufficient to state claim upon which relief may be granted).

20 **D.   Fourteenth Amendment Claim Against Defendant Furster**

21 Plaintiff alleges that Defendant Furster violated his due process
22 rights by affirming Dunn's guilty finding on appeal. Furster contends
23 that Plaintiff's claim should be dismissed because he cannot be held
24 liable based solely upon his participation in the administrative
25 grievance procedure.

27 [2] While he notes other general hardships he suffered as a result
28 of his confinement in SHU, these other types of burdens do not give
   rise to a protected liberty interest.

As an initial matter, the Court notes that Plaintiff has no constitutional right to an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); see *also George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under § 1983); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.").

A prison official's denial of an inmate's grievance or appeal from a misconduct finding generally does not constitute significant participation in an alleged constitutional violation sufficient to give rise to personal liability. *See Wilson v.* Woodford, 2009 WL 839921, *6 (E.D. Cal. 2009)(ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.); Foreman *v. Goord*, No. 02 Civ. 7089 (SAS), 2004 WL 1886928 (S.D.N.Y. 2004)(holding prison superintendent's affirmation of the plaintiff's grievance denial insufficient to establish personal involvement necessary for section 1983 liability); *Piggie v. Parke*, No. 3:96-CV-458RP, 1997 WL 284796, *3 (N.D. Ind. 1997)("The mere act of denying a grievance following a transitory incident, however, does not provide a basis for liability under § 1983. Prisoners have no

13

1    constitutional right to a grievance procedure...")(citation omitted).

2        Here, to the extent that Plaintiff is raising a due process claim

3    against Defendant Furster based solely upon his participation in

4    Plaintiff's administrative appeal process, such allegation fails to

5    state a federal civil rights claim. Accordingly, the motion to dismiss

6    the Fourteenth Amendment due process claims against Furster should be

7    granted.

8    **E.    Fourteenth Amendment Due Process Claim Based Upon Alleged**

9           **Failure to Process Plaintiff's Prison Grievances**

10       Plaintiff alleges that his due process rights were violated

11   because his prison grievances were not processed. Defendants contend

12   that this claim should be dismissed because Plaintiff has failed to

13   allege that any named Defendant was responsible for or caused the

14   alleged failure to process Plaintiff's prison grievances. (Mot. to

15   Dismiss at 12.)

16       As discussed above, Plaintiff has no right to an effective

17   grievance procedure. Moreover, in order to establish liability under

18   42 U.S.C. § 1983, Plaintiff must prove that a person acting under

19   color of state law deprived him of rights, privileges, or immunities

20   secured by the Constitution or laws of the United States. *Parratt v.*

21   *Taylor*, 451 U.S. 527, 535 (1981). A person deprives another "of a

22   constitutional right, within the meaning of section 1983, if he does

23   an affirmative act, participates in another's affirmative acts, or

24   omits to perform an act which he is legally required to do that *causes*

25   the deprivation of which [the plaintiff complains]." *Leer v. Murphy*,

26   844 F.2d 628, 633 (9th Cir. 1988) (citing *Johnson v. Duffy*, 588 F.2d

27   740, 743 (9th Cir. 1978) (emphasis in original). "The inquiry into

28   causation must be individualized and focus on the duties and

14

responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.* (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)).

Here, Plaintiff has failed to allege that any of the named Defendants "[did] an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which [they were] legally required to do that cause[d]" the alleged failure to process his prison grievances. Accordingly, Defendants' motion to dismiss this claim should be granted.

**F.    Eighth Amendment Claim Based Upon Conditions in the SHU**

Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by placing him in the SHU where he was exposed to certain inhumane conditions.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). As a general matter, prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eight Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoners' interest or safety." *Whitely v. Albers*, 475 U.S. 312, 319 (1986) (internal quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must show: (1) the deprivation he suffered was "objectively, sufficiently serious;" and (2) prison officials were deliberately indifferent to his safety

in allowing the deprivation to take place. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Additionally, in order to show causation between the deliberate indifference and the Eighth Amendment deprivation, a prisoner must demonstrate the individual defendant was in a position to take steps to avert the harm, but failed to do so intentionally or with deliberate indifference. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). This inquiry requires "a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Id.* at 633-34. Thus, a prison official may be liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that an inmate faces a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837-45.

Plaintiff asserts that his assignment to the SHU alone constituted cruel and unusual punishment. More specifically, Plaintiff claims that by placing him in SHU, Defendants denied Plaintiff privileges afforded to inmates housed in the general population, such as outdoor time and exercise, access to work programs and the law library, and the ability to earn good time credits and other similar privileges. However, the simple placement and retention of a prisoner in segregated housing, even for an indeterminate period of time, does not in and of itself implicate the Eighth Amendment. *Toussaint v. Yockey*, 722 F.2d 1490, 1494 n. 6 (9th Cir. 1984).

Plaintiff also alleges that he suffered various psychological effects as a result of being placed in the SHU, such as suicidal thoughts and the necessity of additional psychological treatment. However, a plaintiff cannot prevail on an Eighth Amendment claim "simply by pointing to the generalized 'psychological pain,' - i.e.,

1    the loneliness, frustration, depression or extreme boredom - that
2    inmates may experience by virtue of their confinement in the SHU."
3    *Madrid v. Gomez*, 889 F.Supp. 1146, 1264 (N.D.Cal. 1995) (citing
4    *Toussaint v. McCarthy*, 801 F.2d 1080, 1107-08 (9th Cir. 1986)).  "The
5    Eighth Amendment simply does not guarantee that inmates will not
6    suffer some psychological effects from incarceration or segregation."
7    *Id.* (citing *Jackson v. Meacham*, 699 F.2d 578, 583 (1st Cir. 1983)).
8         However, to the extent that Plaintiff claims that his Eighth
9    Amendment rights were violated by the denial of exercise for four
10   months and his inability to use the upper bunk bed due to his medical
11   condition while in segregation, he has met the minimal requirement of
12   stating a claim upon which relief may be granted. But, Plaintiff has
13   failed to demonstrate how the Defendants named in this action were
14   responsible for the deprivations alleged. Accordingly, this claim must
15   be dismissed as to the named defendants.
16        **G.    Fourteenth Amendment Equal Protection Claim**
17        Plaintiff alleges that the conditions in the SHU violated his
18   Fourteenth Amendment right to equal protection. Defendants allege that
19   Plaintiff has failed to allege facts to establish an equal protection
20   violation by any Defendant. (Mot. to Dismiss at 13.)
21        The Equal Protection Clause of the Fourteenth Amendment commands
22   that no State shall 'deny to any person within its jurisdiction the
23   equal protection of the laws,' which is essentially a direction that
24   all persons similarly situated should be treated alike." *City of*
25   *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting
26   *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal
27   protection claim based on the allegedly selective enforcement of a
28   law, plaintiff must "show that the law is applied in a discriminatory

manner or imposes different burdens on different classes of people."
*Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). To
do so, plaintiff must "identify a 'similarly situated' class against
which plaintiff's class can be compared." *Id*. Then, if the alleged
selective enforcement "does not implicate a fundamental right or a
suspect classification, the plaintiff can establish a 'class of one'
equal protection claim by demonstrating that [he] 'has been
intentionally treated differently from others similarly situated and
that there is no rational basis for the difference in treatment.' "
*Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004)
(quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)
(recognizing an equal protection violation where ordinance targeted a
single individual on basis that state action was arbitrary and
irrational)).

Further, in order to state an equal protection claim based on
intentionally discriminatory treatment, plaintiff must allege that a
particular defendant treated him differently than other prisoners with
an intent or purpose to discriminate against him based on membership
in a protected class, such as race or ethnicity. *See Washington v.
Davis*, 426 U.S. 229, 239-42 (1976). Plaintiff "must show that the
defendants acted with an intent or purpose to discriminate against the
plaintiff based upon membership in a protected class." *Lee v. City of
Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v.
Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998)); *see also City of
Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003)
("proof of racially discriminatory intent or purpose is required to
show a violation of the Equal Protection Clause").

Here, Plaintiff has failed to allege any facts to show that he

1    was either placed in the SHU or suffered any of the conditions in the

2    SHU because of his membership in an identifiable group. He has also

3    failed to allege any facts to demonstrate that he was treated

4    differently in the SHU than other inmates were treated. Nor has he

5    alleged any facts to show that Defendants acted with a discriminatory

6    intent or purpose in placing him in the SHU. Accordingly, Defendants'

7    motion to dismiss Plaintiff's equal protection claims should be

8    granted.

9        **H.   Qualified Immunity**

10       Defendants contend that Plaintiff's complaint should be dismissed

11   because they are entitled to qualified immunity. (Mot. to Dismiss at

12   14.) The doctrine of qualified immunity "protects government officials

13   from 'liability for civil damages insofar as their conduct does not

14   violate clearly established statutory or constitutional rights of

15   which a reasonable person would have known.'" *Tibbetts v. Kulongoski*,

16   2009 WL 1492156, at *5 (9th Cir. May 29, 2009)(quoting *Harlow v.

17   Fitzgerald*, 457 U.S. 800, 818 (1982)). The U.S. Supreme Court in

18   *Saucier v. Katz*, 533 U.S. 194 (2001), established a two-prong approach

19   for determining whether qualified immunity applies in a given

20   situation.[3] These include: (1) Taken in a light most favorable to the

21   plaintiff, do the facts alleged show a constitutional violation?; and

22   (2) Was the allegedly violated constitutional right clearly

23   established in light of the specific context of the case? *Saucier*, 533

24   U.S. at 201. The dispositive inquiry in considering the second prong

25

26       [3] The Court in *Saucier* established these considerations as a strict
     two-step process through which lower courts should move sequentially.
27   533 U.S. at 200-01. In *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009),
     however, the Court held that lower courts have discretion to decide
28   which of the two prongs to consider first.

1   is whether it would be clear to a reasonable official that the conduct
2   was unlawful in the specific situation presented. *Saucier*, 533 U.S. at
3   202 (citations omitted). The qualified immunity standard "gives ample
4   room for mistaken judgments by protecting all but the plainly
5   incompetent or those who knowingly violate the law." *Hunter v. Bryant*,
6   502 U.S. 224, 227 (1991).

7       Here, the right to be free from retaliation for the filing of
8   grievances, as well the due process rights guaranteed by *Wolff* and
9   *Sandin*, were clearly established in 2006. It cannot be said on the
10  record before the Court that Defendants Poodry or Dunn are protected
11  by qualified immunity.

12

13  **IV.   Conclusion**

14      **IT IS THEREFORE ORDERED as follows:**

15      1.   The second amended complaint is dismissed without prejudice
16  for the reasons stated above.

17      2.   Plaintiff has until **November 8, 2011**, to file a third
18  amended complaint, that remedies the defects identified in this
19  memorandum and order and complies with the requirements of the Federal
20  Rules of Civil Procedure and Local Rule 15-2.[4] Any amended complaint
21  must bear the docket number assigned in this case and must be labeled
22  second amended complaint." Plaintiff is advised that an amended
23  complaint is a document stating one or more causes of action against
24  one or more defendants. Local Rule 15-2. Pursuant to Fed.R.Civ.P. 8,

25  _____

26      [4] "Every amended pleading filed as a matter of right or allowed by
27  order of Court shall be complete including exhibits. The amended
    pleading shall not refer to the prior, superseded pleading." Local
28  Rule 15-2.

Plaintiff should make a short and plain statement of the facts underlying his claims, the specific defendant to whom the facts apply; and the nature of the relief he seeks. The third amended complaint must be plainly written and legible.

3. If Plaintiff fails to timely file the amended complaint, or if the amended complaint fails to properly plead a cause of action against any defendant, the complaint will be dismissed with prejudice or as to that defendant.

4. The Court's deputy clerk shall serve on Plaintiff a copy of this memorandum and order and a blank civil rights complaint form bearing the case number assigned to this action and marked to show that it is a "Third Amended Complaint." If Plaintiff chooses to continue prosecuting this action, he must use this form to the extent possible.

Dated: October 13, 2011

Marc L. Goldman
United States Magistrate Judge

21